**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| CODING TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:17-cv-23714 |
| | ) |
| MERCEDES-BENZ USA, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MERCEDES-BENZ USA, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS FOR IMPROPER
VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER
AND ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

Page

I.  FACTUAL BACKGROUND ............................................................................................. 2

    A.  Plaintiff Coding Technologies, LLC ....................................................................... 2

    B.  Defendant MBUSA ................................................................................................. 2

II.  THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE OR, IN THE
ALTERNATIVE, TRANSFERRED TO THE NORTHERN DISTRICT OF GEORGIA . 3

    A.  Legal Standard For A Rule 12(b)(3) Motion In A Patent Case .............................. 3

    B.  MBUSA Should Be Dismissed For Improper Venue ............................................. 4

        1.  MBUSA Does Not Reside In This District ................................................. 4

        2.  MBUSA Does Not Have A "Regular and Established Place of
Business" In This District ........................................................................... 5

    C.  In The Alternative, The Court Should Transfer Venue To The Northern District Of
Georgia .................................................................................................................... 6

        1.  Proper Venue For This Matter Is In The Northern District Of
Georgia Under 28 U.S.C. § 1406(a) ........................................................... 7

        2.  Transfer Is Also Warranted Under 28 U.S.C. § 1404(a) ............................ 7

            a.  Convenience Of The Parties And Witnesses, And Ease Of Access
To Sources Of Proof ...................................................................... 8

            b.  Availability Of Service Of Process To Compel The Presence Of
Unwilling Witnesses ...................................................................... 9

            c.  Cost Of Obtaining The Presence Of Witnesses ............................ 10

            d.  Public Interest ............................................................................... 10

            e.  All Other Practical Problems That Make Trial Of The Case Easy,
Expeditious, And Inexpensive ..................................................... 11

III.  THE COURT SHOULD DISMISS CODING TECHNOLOGIES' INDIRECT AND
WILLFUL INFRINGEMENT ALLEGATIONS FOR FAILURE TO STATE A CLAIM
.................................................................................................................................... 12

    A.  Legal Standard For A Rule 12(b)(6) Motion ....................................................... 12

    B.  The Court Should Dismiss The Complaint's Boilerplate Indirect Infringement
Allegations ............................................................................................................ 12

        1.  The Complaint Fails To Plausibly Allege Knowledge Of The
'159 Patent ............................................................................................... 14

        2.  The Complaint Fails To Identify Instances Of Third-Party Direct
Infringement ............................................................................................. 15

        3.  Coding Technologies Fails To Allege Intent To Induce
Infringement ............................................................................................. 16

          4.     The Complaint Fails To Plausibly Allege A Sale, An Offer To
Sell, Or An Import ..................................................................................... 17

    C.    The Court Should Dismiss The Complaint's Willfulness Allegation Because It
Fails To Plausibly Allege Knowledge Of The '159 Patent Or Egregious Conduct
.................................................................................................................................... 17

IV.     CONCLUSION.............................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................ 12

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
    134 S. Ct. 568 (2013).......................................................................................................... 8

*Atmos Nation, LLC v. BnB Enter., LLC*,
    No. 16-62083-CIV, 2017 WL 5004844 (S.D. Fla. Aug. 22, 2017) .................................... 18, 19

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)............................................................................................ 13

*Brunswick Corp. v. Suzuki Motor Co.*,
    575 F. Supp. 1412 (E.D. Wisc. 1983).................................................................................. 6

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
    157 F. Supp. 3d 1219 (S.D. Fla. 2016) ................................................................................ 8

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
    254 F. Supp. 3d 836 (E.D. Va. 2017) .................................................................................. 6

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)........................................................................................................ 14

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017)............................................................................................ 5, 7

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)............................................................................................ 15, 16

*e-LYNXX Corp. v. Innerworkings, Inc.*,
    No. 1:10-CV-2535, 2011 WL 3608609 (M.D. Pa. Aug. 16, 2011) ........................................ 16

*Franklin v. Curry*,
    738 F.3d 1246 (11th Cir. 2013) .......................................................................................... 12, 17

*Geltech Sols. v. Marteal, Ltd.*,
    No. 09-CV-81027, 2010 WL 1791423 (S.D. Fla. May 5, 2010) ...................................... 10, 11

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)............................................................................................ 9

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ................................................................................................ 13

*Goodwin v. Best Plan, Int'l, Ltd.*,
    No. C-04-2219EDL, 2004 WL 1924147 (N.D. Cal. Aug. 30, 2004) ........................................ 4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ................................................................................................ 18

*In re Hoffmann-La Roche, Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ................................................................................... 11

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ..................................................................................... 13

*Lex Tex Ltd. v. Aileen, Inc.*,
    326 F. Supp. 485 (S.D. Fla. 1971) .............................................................................. 5, 6

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017) ................................................................................... 16

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    134 S. Ct. 2111 (2014) ................................................................................................ 13

*LoganTree LP v. Garmin Int'l, Inc.*,
    C.A. No. SA-17-CA-0098-FB, 2017 WL 2842870 (W.D. Tex. June 22, 2017) ...................... 6

*M Tobacos, Inc. v. Case*,
    No. 14-cv-81481, 2015 WL 11438107 (S.D. Fla. Apr. 17, 2015) ........................................... 4

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012) ............................................................................. 15

*Motorola Mobility, Inc. v. Microsoft Corp.*,
    804 F. Supp. 2d 1271 (S.D. Fla. 2011) .......................................................................... 8

*Nanosys, Inc. v. QD Vision, Inc.*,
    No. 16-CV-01957-YGR, 2016 WL 4943006 (N.D. Cal. Sept. 16, 2016) .............................. 15

*Nolan Helmets S.p.A. v. Fulmer Helmets, Inc.*,
    No. 95-6401-CIV, 1995 WL 789505 (S.D. Fla. Nov. 27, 1995) ........................................... 11

*Osgood v. Disc. Auto Parts, LLC*,
    981 F. Supp. 2d 1259 (S.D. Fla. 2013) .......................................................................... 8

## TABLE OF AUTHORITIES
### *(continued)*

*Patent Holder LLC v. Lone Wolf Distribs., Inc.*,
   No. 17-23060-CIV, 2017 WL 5032989 (S.D. Fla. Nov. 1, 2017) ............................................ 5

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012) ............................................................................................. 12

*Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*,
   645 F. Supp. 2d 1130 (S.D. Fla. 2009) ................................................................................... 6

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017) ........................................................................................................ 3, 4

*Trace-Wilco, Inc. v. Symantec Corp.*,
   No. 08-80877-CIV, 2009 WL 455432 (S.D. Fla. Feb. 23, 2009) ....................................... 9, 11

*Universal City Studios v. Nissim, Corp.*,
   No. 14-81344-CIV-KAM, 2015 WL 1124704 (S.D. Fla. Mar. 12, 2015) .............................. 15

*Wai v. Rainbow Holdings*,
   315 F. Supp. 2d 1261 (S.D. Fla. 2004) ................................................................................... 3

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ............................................................................................. 18

*Weiland Sliding Doors and Windows Inc. v. Panda Windows and Doors, LLC*,
   No. 10-cv-677-JLS-MDD, 2011 WL 3490471 (S.D. Cal. Aug. 10, 2011) ............................ 16

*Wi-Lan, USA, Inc. v. Research in Motion Limited*,
   No. 12-CV-24349-DMM/DLB, 2013 WL 12092486 (S.D. Fla. June 7, 2013) ...................... 15

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................................... 1, 3, 5, 7

28 U.S.C. § 1404(a) .................................................................................................................... 8

28 U.S.C. § 1406(a) ................................................................................................................. 3, 7

Defendant Mercedes-Benz USA, LLC ("MBUSA") hereby moves to dismiss Plaintiff Coding Technologies, LLC's Complaint for two reasons.

***First***, this Court is not the proper venue for this case and thus it should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.  Venue in patent cases is governed by 28 U.S.C. § 1400(b).  Under the Supreme Court's holding in *TC Heartland*, decided earlier this year, Section 1400(b) provides only two scenarios under which venue for a patent case can be proper in this District:  either (1) the defendant is incorporated in Florida, or (2) the defendant has committed acts of infringement and has a "regular and established place of business" in this District.  Neither of these scenarios is applicable here, as MBUSA is not incorporated in Florida (it is a Delaware corporation) and MBUSA does not have a "regular and established place of business" in this District.  If the Court finds that dismissal is not appropriate, MBUSA requests that the Court transfer the case to the Northern District of Georgia, where MBUSA's headquarters are located.

***Second***, Coding Technologies' indirect and willful infringement allegations are far too terse and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Coding Technologies has not adequately pled facts regarding necessary aspects for either theory of infringement.  Instead, Coding Technologies' allegations merely parrot legal elements of the cause of action using identical language it uses in the dozens of other complaints it filed asserting the same patent against other defendants across the country.  With respect to indirect infringement, the Complaint completely fails to allege that:  (1) MBUSA had knowledge of the '159 Patent, which is required for any claim of indirect infringement; (2) any third party directly infringes the '159 Patent, which is required to establish indirect infringement; (3) MBUSA intended to induce infringement; or (4) MBUSA made a sale, an offer for sale, or imported any

1

components, materials, devices, or systems, which is required for a claim of contributory infringement.  With respect to willful infringement, the Complaint is completely deficient under the standard recently articulated in the Supreme Court's *Halo* case.  Accordingly, Coding Technologies has failed to state a claim for indirect or willful infringement, and those allegations should be dismissed.

## I.    FACTUAL BACKGROUND

### A.  Plaintiff Coding Technologies, LLC

Plaintiff Coding Technologies, LLC ("Coding Technologies") filed its Complaint against MBUSA on October 11, 2017.[1]  *See* Dkt. 1.  The Complaint states that Plaintiff is "a foreign limited liability company, organized under the laws of the State of Texas."  *Id.* ¶ 2.

The Complaint alleges that MBUSA directly infringes U.S. Patent No. 8,540,159 ("the '159 Patent") through "internal use and testing" of "a user terminal designed to capture certain code pattern information and convert same into embedded content."  *See, e.g., id.* ¶¶ 15 and 19-24.  The Complaint also alleges that MBUSA induced and contributed to the infringement of the '159 Patent, and that MBUSA's alleged infringement was willful.  *Id.* ¶¶ 15 and 68.

### B.  Defendant MBUSA

Defendant MBUSA is a Delaware limited liability company with offices in various locations, none of which are located in the Southern District of Florida.  *See* Hammond Decl. ¶¶ 3 and 5.  Its headquarters are located in Atlanta, Georgia.  *Id.* ¶ 3.  MBUSA is responsible for the distribution, marketing and customer service for Mercedes-Benz vehicles in the United States. *Id.* ¶ 4.  This includes distributing vehicles to a nationwide network of dealers and providing

---

[1] This case is one of more than 45 cases filed this year by Coding Technologies in various districts around the country asserting the same patent.

support for vehicles that are sold throughout the United States. *Id.* MBUSA does not own or control any of those dealers, other than one dealer located in New York City. *Id.* ¶ 7.

MBUSA does not own or lease any offices or facilities in the Southern District of Florida. *Id.* ¶ 6. MBUSA's only contacts with the Southern District of Florida are in connection with its support of any dealers located in the District. *Id.* However, this support is not unique to the dealers located in this District; rather, MBUSA provides this support to dealers across the country. *Id.*

## II. THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TRANSFERRED TO THE NORTHERN DISTRICT OF GEORGIA

### A. Legal Standard For A Rule 12(b)(3) Motion In A Patent Case

Section 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1519 (2017) (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). Under this provision, venue for a patent infringement action is limited to (1) "the judicial district where the defendant resides," which means its place of incorporation for a domestic corporation, or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland*, 137 S. Ct. at 1520. Once a court has determined that venue is improper, dismissal or transfer is mandatory: "The district court of a district in which is filed a case laying venue in the wrong division or district *shall* dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added).

When considering a Rule 12(b)(3) motion, as here, the Court may "consider matters outside the pleadings such as affidavit testimony, particularly when the motion is predicated upon key issues of fact." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)

3

(internal quotation and citation omitted).  When responding to a motion to dismiss under Rule 12(b)(3), the plaintiff bears the burden of demonstrating that venue in the forum is proper.  *Id.* For purposes of the motion, allegations in the complaint are only taken as true if they are not contradicted by the defendant's affidavits.  *Id.*

### B.  MBUSA Should Be Dismissed For Improper Venue

Dismissal of this case under Rule 12(b)(3) is required because the conditions of the patent venue statute are not satisfied.  As discussed below, MBUSA is not incorporated in Florida and does not have a "regular and established place of business" in the Southern District of Florida.

Coding Technologies' sole venue allegation is a summary statement that "[v]enue is proper in this court, pursuant to 28 U.S.C. § 1400(b), because Defendant has committed acts of infringement in this District and has a regular and established place of business in this district." *See* Dkt. 1 ¶ 6; *see also id.* ¶ 15 (summarily alleging that MBUSA infringes in "this judicial district").  This boilerplate allegation is wholly insufficient to plead the facts to establish venue and is not entitled to deference by the Court.  *See, e.g.*, *M Tobacos, Inc. v. Case*, No. 14-cv-81481, 2015 WL 11438107, at *2 (S.D. Fla. Apr. 17, 2015) (holding that "vague, conclusory allegations" are insufficient to establish venue); *Goodwin v. Best Plan, Int'l, Ltd.*, No. C-04-2219EDL, 2004 WL 1924147, at *2 (N.D. Cal. Aug. 30, 2004) ("The court need not . . . assume the truth of conclusory allegations.").

### 1.  MBUSA Does Not Reside In This District

As the Supreme Court clarified in *TC Heartland*, "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." 137 S. Ct. at 1517.  Here, MBUSA was formed in Delaware, not Florida.  Hammond Decl. ¶ 3.  As a result, there can be no

dispute that venue cannot properly lie in this District under the first prong of Section 1400(b).[2]

### 2. *MBUSA Does Not Have A "Regular and Established Place of Business" In This District*

Coding Technologies cannot establish venue under the second prong of the patent venue

statute because MBUSA does not have a "regular and established place of business" in the

Southern District of Florida.  In a recent decision analyzing this requirement, *In re Cray Inc.*, 871

F.3d 1355 (Fed. Cir. 2017), the Federal Circuit established a three-part test to determine whether

a defendant resides in a judicial district:  "(1) there must be a physical place in the district; (2) it

must be a regular and established place of business; and (3) it must be the place of the

defendant."  *Id.* at 1360;[3] *see also Lex Tex Ltd. v. Aileen, Inc.*, 326 F. Supp. 485, 487 (S.D. Fla.

1971) ("A mere showing of 'doing business' is insufficient in that the Defendant must have a

permanent place of business in the District.") (quoting *Phillips v. Baker*, 121 F.2d 752 (9th Cir.

1941)).  All three requirements must be satisfied, else venue is improper.  *Id.*

Here, MBUSA does not meet the requirements set forth in *In re Cray*.  Indeed, MBUSA

does not own, rent, or lease any offices or facilities within this District.  Hammond Decl. ¶ 6.

Rather, MBUSA's headquarters are in Atlanta, Georgia and it has other offices throughout the

country, none of which are located in the Southern District of Florida.  *Id.* ¶ 5.  While MBUSA

does have an office in Jacksonville, Florida, that office is insufficient to establish venue here

because it does not lie "in [this] judicial district."  28 U.S.C. § 1400(b); Hammond Decl. ¶ 5;

*Patent Holder LLC v. Lone Wolf Distribs., Inc.*, No. 17-23060-CIV, 2017 WL 5032989, at *8

---

[2] Coding Technologies' Complaint does not even allege that venue is proper under the first prong.  *See* Dkt. 1 ¶ 6.

[3] The law of the Federal Circuit applies to matters unique to patent law, and "[t]hus, Federal Circuit law, rather than regional circuit law, governs . . . what § 1400(b) requires."  *In re Cray*, 871 F.3d at 1360.

(S.D. Fla. Nov. 1, 2017) (determining venue is improper because defendant did not have a "regular and established place of business" in this District); *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1145 (S.D. Fla. 2009) (noting that Section 1400(b) requires "a regular and established place of business in the district where it is sued").

Coding Technologies may argue that the eleven Mercedes dealers located in the Southern District of Florida are sufficient to establish venue over MBUSA.  This is incorrect, as the dealers are independent sales operations that are not owned, operated, or controlled by MBUSA. Hammond Decl. ¶ 7.  Nor does MBUSA own or control the property on which the dealers operate.  *Id.*  Moreover, none of the dealers are agents of MBUSA and none of them have the authority to bind MBUSA in any manner.  *Id.*  Thus, the Mercedes dealerships are not "regular and established place[s] of business" of MBUSA.  *See Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 254 F. Supp. 3d 836, 840 (E.D. Va. 2017) ("The presence of independent dealers in a district does not qualify as a 'regular and established place of business.'"); *Brunswick Corp. v. Suzuki Motor Co.*, 575 F. Supp. 1412, 1424 (E.D. Wisc. 1983) (same); *LoganTree LP v. Garmin Int'l, Inc.*, C.A. No. SA-17-CA-0098-FB, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("the fact that defendants sell their [products] to distributors in [the district] will not establish venue"); *Lex Tex Ltd.*, 326 F. Supp. at 487 (presence of independent sale representative in a district does not qualify as a "regular and established place of business.").

Given that MBUSA has no offices or other facilities in this District, Coding Technologies cannot establish that MBUSA has a "regular and established place of business" here.  Therefore, venue cannot properly lie in this District under the second prong of § 1400(b).

### C.  In The Alternative, The Court Should Transfer Venue To The Northern District Of Georgia

If the Court decides to transfer, rather than dismiss, this case, it should transfer the case to

the Northern District of Georgia.  As discussed below, the Northern District of Georgia is the proper venue for this action under either 28 U.S.C. § 1406(a) or § 1404(a).

### 1. Proper Venue For This Matter Is In The Northern District Of Georgia Under 28 U.S.C. § 1406(a)

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district *shall* dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought [emphasis added]."  As explained above, domestic corporations "reside" in their state of incorporation and in any district where they have a physical location that is a "regular and established place of business."  28 U.S.C. § 1400(b); *In re Cray*, 871 F.3d at 1360.

Here, venue in the Northern District of Georgia is appropriate under Section 1406(a).  As discussed above, MBUSA's headquarters are located in Atlanta, Georgia, which is in the Northern District of Georgia.  Hammond Decl. ¶ 3.  Those headquarters oversee the distribution, marketing, and customer service for all Mercedes-Benz products in the United States.  *Id.* ¶ 4. Thus, venue in the Northern District of Georgia is appropriate because MBUSA has a physical location in that district that is a regular and established place of business.[4]

### 2. Transfer Is Also Warranted Under 28 U.S.C. § 1404(a)

If the Court were to determine that transfer to the Northern District of Georgia is not mandatory under Sections 1400(b) and 1406(a), it should nonetheless transfer the case to that district under Section 1404(a).  Section 1404(a) provides courts with discretion to transfer venue to any district in which it could have been brought when the facts demonstrate that litigating in

---

[4] Moreover, MBUSA recently filed a Complaint for declaratory judgment of non-infringement of the '159 Patent against Coding Technologies in the Northern District of Georgia, so that court will already be addressing the merits of the claims presented by this case.  *Mercedes-Benz USA, LLC v. Coding Technologies, LLC*, Case No. 1:17-cv-04952-LMM, filed December 6, 2017.

another district would increase the overall convenience to the parties and witnesses and serve the interests of justice. 28 U.S.C. § 1404(a).  In deciding whether to transfer a case, a court should consider the balance of private and public interests.  *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 & n.6 (2013).

The first inquiry in determining whether a transfer is proper under Section 1404(a) is whether the action could have been originally filed in the venue where transfer is sought.  *See Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016); *see also Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013).  As discussed above, this suit could have been filed in the Northern District of Georgia, where MBUSA's headquarters are located.  Hammond Decl. ¶ 3.

The second inquiry assesses whether transfer is appropriate based on relevant factors regarding convenience and the interest of justice, which include:

> (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of service of process to compel the presence of unwilling witnesses, (5) the cost of obtaining the presence of witnesses, (6) the public interest, and (7) all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1275-76 (S.D. Fla. 2011) (quoting *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002)). Here, all of these factors favor transferring this case to the Northern District of Georgia.

### a. Convenience Of The Parties And Witnesses, And Ease Of Access To Sources Of Proof

The Northern District of Georgia would be a significantly more convenient forum for the parties and witnesses, and for ease of access to sources of proof, such as documents and records. While the deadline for serving initial disclosures has yet to occur, MBUSA does not foresee identifying any witnesses located in this District.  The majority of MBUSA's relevant employees

and documents are located at its headquarters, which are in the Northern District of Georgia. Hammond Decl. ¶ 3.  This office hosts over one-third of MBUSA's workforce, and houses MBUSA's sales, marketing, and information technology divisions.  *Id.*

Notably, Coding Technologies likely has very few employees or documents relevant to the asserted patent, and thus cannot argue that these factors weight in its favor.  Indeed, Coding Technologies has existed since only April 2017 and is registered in Texas, not Florida.  *See* Andrea Decl. ¶ 2, Ex. A.  Its manager resides in Texas, and its address is in Texas.  *Id.* Moreover, Coding Technologies does not appear to have developed the technology that led to issuance of the asserted '159 Patent in this case.  Rather, according to the U.S.P.T.O. assignment database, the '159 Patent was originally owned by KTFreetel Co., Ltd. in Korea, and was not assigned to Coding Technologies until May 1, 2017, almost four years after the patent issued and following multiple intervening assignments.  *See Id.* ¶¶ 3-4, Exs. B-C .  Therefore, it is likely that none of Plaintiff's executives or employees have knowledge of the conception, design, development, or prosecution of the '159 Patent.  That information will likely be obtained from the third-party inventors, whom the '159 Patent indicates reside in Korea.

Accordingly, these factors weigh in favor of transfer to the Northern District of Georgia, where the majority of discovery will occur.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1343-45 (Fed. Cir. 2009) (reasoning that in patent infringement cases, "the bulk of the relevant evidence" is often from the defendant, and therefore "the place where defendant's documents are kept weighs in favor of transfer to that location" (citation omitted)); *see also Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at \*4 (S.D. Fla. Feb. 23, 2009).

### b. Availability Of Service Of Process To Compel The Presence Of Unwilling Witnesses

The availability of service of process to compel the presence of unwilling witnesses

weighs in favor of a transfer to the Northern District of Georgia.  Rule 45(c) of the Federal Rules of Civil Procedure states:

> [A] subpoena may command a person to attend a trial, hearing, or deposition . . . (A) within 100 miles of where the person resides, is employed or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

As discussed above, the majority of MBUSA's witnesses are located at its headquarters, in the Northern District of Georgia, and the inventors appear to reside in Korea.  There is no indication that there will be any unwilling witnesses who could be compelled to appear in Miami but not in Atlanta.

### c.  Cost Of Obtaining The Presence Of Witnesses

The costs of obtaining the presence of witnesses (*i.e.*, at trial) weighs in favor of transferring the case to the Northern District of Georgia.  As discussed above, the vast majority of the witnesses will be in the Northern District of Georgia because that is where MBUSA's headquarters are located.  The costs of travel, lodging, food, and time away from work and family are thus substantially greater for witnesses traveling from Atlanta to Miami, than if the witnesses could stay near their residences and places of employment.

### d.  Public Interest

Because the private interests support a transfer to the Northern District of Georgia, this Court need not even consider the public interest factors.  *See Geltech Sols. v. Marteal, Ltd.*, No. 09-CV-81027, 2010 WL 1791423, at *7 (S.D. Fla. May 5, 2010) ("Public interest factors may only be considered if the private factors are even or neutral.") (citing *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1298 (11th Cir. 2009)).  Nonetheless, the public interest factors likewise point to Georgia.  In considering the "interests of justice," courts consider

relative court congestion, the local interest in having localized controversies decided at home, and the unfairness in burdening citizens in an unrelated forum with jury duty. *Trace-Wilco*, 2009 WL 455432, at *2; *see also Geltech Solutions, Inc.*, 2010 WL 1791423 at *7 ("Public interest factors are those reasons related to the forum:  the familiarity of the court with the applicable law, the connection with the chosen forum (in order to avoid juries having to hear cases which are wholly unrelated to local interests), and a host of other factors relating to judicial efficiency.").

The Southern District of Florida has no local interest in trying this case.  The burden of jury duty "ought not to be imposed upon the people of a community which has no relation to the litigation." *Nolan Helmets S.p.A. v. Fulmer Helmets, Inc.*, No. 95-6401-CIV, 1995 WL 789505, at *2 (S.D. Fla. Nov. 27, 1995) (citation omitted).  Residents of the Northern District of Georgia have a substantial interest in resolving Coding Technologies' claims that MBUSA has infringed the '159 Patent.  MBUSA is a large employer in the Atlanta region.  Coding Technologies is not registered to do business in Florida.

In contrast, the residents of that district have an interest in resolving disputes over the validity of claims against MBUSA, as such claims have an impact on the viability and strength of a large local source of employment.  *See In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding that the district had a strong local interest in the case because the patent infringement cause of action called into question the work and reputation of several individuals residing in or near the district).

Accordingly, the public interest factors, if they are considered, weigh in favor of transfer to the Northern District of Georgia.

### e.  All Other Practical Problems That Make Trial Of The Case Easy, Expeditious, And Inexpensive

Given the residence of MBUSA, the location of the majority of witnesses and sources of

proof, and the significant costs associated with getting witnesses and parties to Miami,

transferring the case to the Northern District of Georgia would make trial of this case cheaper and

more efficient.

## III.   THE COURT SHOULD DISMISS CODING TECHNOLOGIES' INDIRECT AND WILLFUL INFRINGEMENT ALLEGATIONS FOR FAILURE TO STATE A CLAIM

### A.  Legal Standard For A Rule 12(b)(6) Motion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility turns on the "factual content" of the complaint's allegations—"[a] claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*  As a result, "[m]ere labels

and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a

plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v.

Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (internal quotation marks and citation omitted).  In

the Eleventh Circuit, a Court analyzes a complaint by "identifying 'pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth.'" *Resnick v. AvMed,

Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 680).  The Court "then

turn[s] to the 'well-pleaded factual allegations' and, assuming their veracity, 'determine[s]

whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 680).

### B.  The Court Should Dismiss The Complaint's Boilerplate Indirect Infringement Allegations

The Complaint's boilerplate allegations of indirect infringement (inducement and

contributory infringement)—many of which appear verbatim in complaints filed in this court

against different defendants—consist of nothing more than conclusory pleadings devoid of any factual content and should be dismissed. Allegations of indirect infringement must comply with the requirements articulated in *Twombly* and *Iqbal*. *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336-37 (Fed. Cir. 2012). Specifically, allegations of induced infringement must include allegations of fact that, if true, would establish direct infringement by a third party of at least one claim of the asserted patent. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) ("[O]ur case law leaves no doubt that inducement liability may arise if, but only if [there is] . . . direct infringement." (citation omitted)). The complaint must further allege facts showing "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).

"A party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010). "That 'material or apparatus' must be a material part of the invention, have no substantial noninfringing uses, and be known (by the party) 'to be especially made or especially adapted for use in an infringement of such patent.'" *Id.* at 850-51 (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).

The following sentence is the sum total of Coding Technologies' indirect infringement allegations against MBUSA:

> Upon information and belief, Defendant has and continues to directly infringe, ***contributorily infringe, or actively induce the infringement*** of the '159 Patent by making, using (including by at least internally testing the Accused Products as defined herein), selling, offering for sale, importing in the United States, including this judicial district, a user terminal designed to capture certain code pattern information and convert same into embedded content, which embodies or uses the invention claimed in the '159 Patent (the "Accused Products"), all in violation of 35

13

U.S.C. § 271.

Dkt. 1 ¶ 15 (emphasis added).  This barebones and conclusory allegation—which is included

verbatim in complaints filed in this Court against Copart, Inc. and Cross Match Technologies,

Inc.—falls well short of the factual content required to allege a plausible claim for relief for

indirect infringement, and should be dismissed.  *See* Andrea Decl. ¶ 5, Ex. D (Copart complaint)

¶ 15; Andrea Decl. ¶ 6, Ex. E (Cross Match complaint) ¶ 15.  Specifically, Coding Technologies'

Complaint fails to properly allege that:  (1) MBUSA had knowledge of the '159 Patent, which is

required for any claim of indirect infringement; (2) any third party directly infringes the '159

Patent, which is again required to establish indirect infringement; (3) MBUSA intended to induce

infringement; or (4) MBUSA made a sale, an offer for sale, or imported any components,

materials, devices, or systems, which is required for a claim of contributory infringement.

### 1.   *The Complaint Fails To Plausibly Allege Knowledge Of The '159 Patent*

Induced and contributory infringement both require that the defendant knew of the

asserted patent.  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("Like

induced infringement, contributory infringement requires knowledge of the patent in suit and

knowledge of patent infringement.").  The Complaint completely fails to include any facts

sufficient to infer such an allegation.  Indeed, the Complaint's single sentence alleging indirect

infringement is silent on whether MBUSA had knowledge of the '159 Patent.  And, while the

single sentence alleging willful infringement—which also appears verbatim in Coding

Technologies' other complaints filed in this district—alleges that "[u]pon information and belief,

Defendant has known of the existence of the '159 Patent," such an allegation lacks any "factual

content" that would lead to the reasonable inference that MBUSA knew of the '159 Patent.  *See*

Dkt. 1 ¶ 68.  The Complaint does not allege that Coding Technologies or any of the prior owners

of the '159 Patent notified MBUSA of the patent, or any other facts that support its "information

and belief."

This Court has previously held that a summary allegation of knowledge similar to Coding Technologies' allegation is insufficient to survive a Rule 12(b)(6) motion.  For example, in *Universal City Studios v. Nissim*, *Corp.*, the Court dismissed indirect infringement allegations where the "Defendant [did] nothing more than state that Plaintiffs have knowledge of the patent and an intent to infringe."  No. 14-81344-CIV-KAM, 2015 WL 1124704, at *5 (S.D. Fla. Mar. 12, 2015).  The Court explained that such "barebone allegations" are insufficient at the pleading stage because they "do not provide the Court with an adequate basis to draw an inference of plausible culpability."  *Id.*  And, in *Wi-Lan, USA, Inc. v. Research in Motion Limited*, this Court held that allegations considerably more detailed than Coding Technologies' allegation—alleging knowledge based on previous litigation between the parties, previous ownership of the patent, and an alleged "collaborative and competitive relationship"—were nonetheless insufficient.  No. 12-CV-24349-DMM/DLB, 2013 WL 12092486, at *3 (S.D. Fla. June 7, 2013).  This Court's practice of dismissing indirect infringement allegations lacking factual content for knowledge allegations is consistent with courts around the country.  *See, e.g.*, *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232-33 (D. Del. 2012); *Nanosys, Inc. v. QD Vision, Inc.*, No. 16-CV-01957-YGR, 2016 WL 4943006, at *4 (N.D. Cal. Sept. 16, 2016).

Accordingly, the Complaint's knowledge allegation lacks the factual content needed to survive a Rule 12(b)(6) motion to dismiss and, for at least this reason, the Court should dismiss the Complaint's induced and contributory infringement allegations.

### 2.   The Complaint Fails To Identify Instances Of Third-Party Direct Infringement

"A defendant's liability for indirect infringement must relate to the identified instances of direct infringement."  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed.

Cir. 2004). To satisfy this requirement, a plaintiff must identify "individual acts" of infringement or a "category of infringers," and it must identify some third party that directly infringes in order to make a plausible claim of indirect infringement. *Id.* Coding Technologies' Complaint does neither—the only direct infringement allegations are the allegations that MBUSA infringes through "internal use and testing." *See, e.g.*, Dkt. 1 ¶¶ 19-24. There is no mention of *any* third-party that MBUSA allegedly induces to infringe, or to whose infringement MBUSA allegedly contributes. Thus, as in *e-LYNXX Corp. v. Innerworkings, Inc.*, the Complaint here "fails to make even a general identification of the alleged direct infringers." No. 1-10-CV-02535, 2011 WL 3608642, at *7 (M.D. Pa. July 26, 2011) (Report and Recommendation on Motion to Dismiss), report and recommendation adopted, No. 1:10-CV-2535, 2011 WL 3608609 (M.D. Pa. Aug. 16, 2011); *see also Weiland Sliding Doors and Windows Inc. v. Panda Windows and Doors, LLC*, No. 10-cv-677-JLS-MDD, 2011 WL 3490471, at *3 (S.D. Cal. Aug. 10, 2011) (finding that because the plaintiff "failed [to] allege that third parties have directly infringed, the Court finds it difficult to infer that Defendants had the requisite affirmative intent to cause direct infringement").

Accordingly, the Complaint's failure to identify any third-party direct infringement is insufficient to survive a Rule 12(b)(6) motion to dismiss and, for at least this reason, the Court should dismiss the Complaint's induced and contributory infringement allegations.

### 3. *Coding Technologies Fails To Allege Intent To Induce Infringement*

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading*, 681 F.3d at 1339) (bracketed text added by Court in *Lifetime*). Here, Coding

Technologies' Complaint lacks even a conclusory allegation that MBUSA intended to induce any other party to infringe the '159 Patent.  Indeed, Coding Technologies has made no effort to allege the requisite intent and, for at least this reason, the Court should dismiss the Complaint's induced infringement allegation.

### 4. *The Complaint Fails To Plausibly Allege A Sale, An Offer To Sell, Or An Import*

Under 35 U.S.C. § 271(c), a party is liable for contributory infringement only if it "offers to sell or sells within the United States or imports into the United States a component . . . or a material or apparatus."  Here, Coding Technologies' Complaint does not plausibly allege that MBUSA offered to sell, sold, or imported any components, materials, devices, or systems.  Rather, the Complaint includes only a conclusory allegation that parrots the elements of 35 U.S.C. § 271(a), but includes no details as to what components MBUSA allegedly has sold, offered to sale, or imported.  Dkt. 1 ¶ 15 (alleging that MBUSA infringes by "selling, offering for sale, [and] importing. . . .").  Such a formulaic allegation is not entitled to an assumption of truth for purposes of a Rule 12(b)(6) motion.  *See, e.g.*, *Franklin*, 738 F.3d at 1251.

Accordingly, the Complaint has not plausibly alleged that MBUSA has sold, offered to sell, or imported any component, material, or apparatus, and, for at least this reason, the Court should dismiss the Complaint's contributory infringement allegation.

### C. The Court Should Dismiss The Complaint's Willfulness Allegation Because It Fails To Plausibly Allege Knowledge Of The '159 Patent Or Egregious Conduct

As with its indirect infringement allegations, Coding Technologies' willfulness allegation is a single conclusory sentence that is wholly insufficient to state a claim for willful infringement:

> Upon information and belief, Defendant has known of the existence of the '159 Patent, and its acts of infringement have been willful and in disregard for the '159 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

Dkt. 1 ¶ 68. This boilerplate allegation is insufficient to plead willfulness under the standard articulated by the Supreme Court in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016).

As an initial matter, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1932–33). As discussed above, Coding Technologies' Complaint fails to plausibly allege that MBUSA knew of the '159 Patent, and the willful infringement allegation should be dismissed for at least that reason. *See Atmos Nation, LLC v. BnB Enter.*, LLC, No. 16-62083-CIV, 2017 WL 5004844, at *2 (S.D. Fla. Aug. 22, 2017) (citing *Halo*, 136 S. Ct at 1936 (Breyer, J., concurring)).

Knowledge of the patent alone, however, is not sufficient, as the patentee must also establish additional, culpable conduct taken in view of knowledge of the asserted patent. *See Halo*, 136 S. Ct. at 1933. Thus, even if Coding Technologies' summary allegation that MBUSA "has known of the existence of the '159 Patent" was sufficient (it is not), its willfulness allegation should still be dismissed. Indeed, the Complaint's single boilerplate sentence—which appears verbatim in the Copart and Cross Match complaints—falls well short of providing the requisite factual content required for this Court to reasonably infer egregious conduct by MBUSA. *See See* Andrea Decl. ¶ 5, Ex. D (Copart complaint) ¶ 58; Andrea Decl. ¶ 6, Ex. E (Cross Match complaint) ¶ 58. This Court's decision in *Atmos Nation* is instructive, as the patentee's willfulness allegation was more detailed than the allegation here, yet it was still dismissed. *See Atmos Nation*, 2017 WL 5004844, at *2 (alleging that the infringement was willful because the plaintiff was "successful and well-known in the industry and Defendant purchased Plaintiffs' products for resale prior to the alleged infringement"). The Court reasoned that such a

18

willfulness allegation was "nearly non-existent" and "do[es] not satisfy the standards of pleading." *Id.* Here, the Complaint states no facts sufficient to allege the requisite egregious conduct, instead providing simply a conclusory statement that MBUSA acted "willful[ly] and in disregard for the '159 Patent." Dkt. 1 ¶ 68. Such a scant allegation is insufficient to withstand a Rule 12(b)(6) motion. Accordingly, the Court should dismiss the Complaint's willful infringement allegation.

## IV.    CONCLUSION

For the foregoing reasons, Defendant MBUSA respectfully requests that Plaintiff Coding Technologies, LLC's Complaint be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or that this matter be transferred to the Northern District of Georgia under 28 U.S.C. §§ 1406(a) and/or 1404(a).

Additionally, MBUSA respectfully requests that Plaintiff Coding Technologies, LLC's allegations of indirect and willful infringement be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**RESPECTFULLY SUBMITTED** in Miami, Florida on December 18, 2017.

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP | RIVERO MESTRE LLP |
| Of Counsel for Mercedes-Benz USA, LLC | Attorneys for Mercedes-Benz USA, LLC |
| 200 Park Avenue | 2525 Ponce de Leon Boulevard, Suite 1000 |
| New York, New York 10166 | Miami, Florida 33134 |
| Telephone: (212) 351-2339 | Telephone: (305) 445-2500 |
| Email: barosenthal@gibsondunn.com | Fax: (305) 445-2505 |
| Email: bandrea@gibsondunn.com | Email: jmestre@riveromestre.com |
| | Email: amcgovern@riveromestre.com |
| | Email: dsox@riveromestre.com |
| | Email: eserve@riveromestre.com |
| | |
| By: s/Brian Rosenthal | By: s/Jorge A. Mestre |
| Brian Rosenthal | Jorge A. Mestre |
| Brian Andrea | Florida Bar No. 088145 |
| | Amanda McGovern |
| | Florida Bar No. 964263 |
| | Daniel Sox |
| | Florida Bar No. 0108573 |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

The undersigned hereby certifies that Defendant has conferred with counsel for Plaintiff on December 11, 2017, regarding Defendants' position that venue is improper.  The parties were unable to resolve any issues regarding the venue, and further conference on this point would be futile.

s/ Brian Andrea
Brian Andrea

## CERTIFICATE OF SERVICE

I certify that on December 18, 2017, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all parties and counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

s/Daniel Alvarez Sox
Daniel Alvarez Sox

20